UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80851-CIV-HURLEY/HOPKINS

AL HEWAR ENVIRONMENTAL
& PUBLIC HEALTH ESTABLISHMENT,

      **Plaintiff,**

**vs.**

SOUTHEAST RANCH, LLC, et al.,

      **Defendants.**

_____/

MEMORANDUM OPINION CONTAINING FINDINGS
OF FACT AND CONCLUSIONS OF LAW

**THIS CASE** involves a contract for the sale of hay between Al Hewar Environmental and

Public Health Establishment ("Al Hewar"), the Plaintiff, and Southeast Ranch, LLC ("Southeast"),

along with its principals Joel Gutierrez and Dagmara Cabrera, the Defendants.   Cabrera was

voluntarily dismissed from the action and the remaining Defendants were defaulted as to liability for

failure to respond to the Complaint on April 14, 2011.  Order Granting in Part Pl.'s Mot. for Default

J. [DE # 27].  The Court then held an evidentiary hearing regarding damages on October 11, 2011.

Pursuant to 52(a), the Court sets forth its findings of fact and conclusions of law below.

### I. Findings of Fact

*A. Background*

1.  Al Hewar is a United Arab Emirates ("U.A.E.") entity engaged in the business of

supplying agricultural products to the government of Abu Dhabi, a constituent emirate of U.A.E.

2.  On March 7, 2008, Al Hewar entered into a contract with Southeast under which

Southeast would deliver 5,000 tons of compressed hay at a price of $315.00 per metric ton for a total

price of $1,575,000.00.  Compl. Ex. 5 [DE # 1-5].  After some problems arose with delivery of this initial amount, the parties modified the contract on July 17, 2008 to require 16,400 tons at the same price of $315.00 per metric ton for a total price of $5,166,00.00.  Compl. Ex. 6 [DE # 1-6].

3.  As part of the contract, Al Hewar paid a down payment of $787,500.00 to Southeast Ranch, which Al Hewar financed with a loan form a local bank.  Compl. ¶ 15 [DE # 1].

4.  Al Hewar had also entered into a contract with Abu Dhabi to sell the hay it received from Southeast Ranch for approximately $415.00 per ton.  The expected net profit per ton after expenses was $100.00 per ton for a total net profit of $1,640,00.00.  Under this contract, Abu Dhabi required Al Hewar to procure a performance bond in the amount of $452,000.00.  Post-Hearing Brief, at 2-3 [DE # 29].

*B. Breach of Contract*

5.  Al Hewar never received any hay from Southeast Ranch pursuant to the contract.  Compl. ¶ 25 [DE # 1].

6.  As a result, Al Hewar was forced to cancel the contract with Abu Dhabi, and Abu Dhabi has refused to release the $452,000.00 bond.  Post-Hearing Brief, at 3 [DE # 29].

7.  Moreover, in the years leading up to the instant contract, Al Hewar had routinely entered into contracts with Abu Dhabi for the sale of hay and expected to renew the contract with Abu Dhabi in subsequent years.  However, since Al Hewar canceled its contract with Abu Dhabi in 2008, Abu Dhabi has refused to engage in hay business transactions with Al Hewar.  *Id.*

8.  Additionally, as a result of Defendant's breach, Al Hewar defaulted on the loan by which it procured the $787,500.00 down payment, and litigation is imminent.  *Id.*

*C. Fraudulent Inducement*

9.  At some time prior to May 7, 2008, Samer Mustafa, the Executive Director of Al Hewar, traveled to Jacksonville, Florida, where he met with Gutierrez to negotiate the contract.  Compl. ¶ 11 [DE # 1].

10.  At the time the parties were negotiating the contract, Gutierrez represented that Southeast Ranch had actually shipped 200,000 tons of agricultural products in the past and that it currently had double compressed hay available for shipment.  Post-Hearing Brief, at 6-7 [DE # 29].

11.  This representation was false, and Gutierrez knew or should have known that it was false at the time it was made.  *Id.*

12.  Al Hewar relied on these false representations by entering into the contracts with Southeast, making a down payment, and entering into the resale contract with Abu Dhabi, for which it obtained the aforementioned performance bond.  *Id.*

## II. Conclusions of Law

*A.  Breach of Contract*

13.  The breach of contract claim is governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG")[1] because the United States, where Southeast has its place of business, and U.A.E., where Al Hewar has its place of business, are both States party to the Convention. Compl. ¶ 26. *See also MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova d'Agostino, S.P.A.*, 144 F.3d 1384 (11th Cir. 1998).

14.  Article seventy-four of the CISG provides as follows:

---

[1]  United Nations Convention on Contracts for the International Sale of Goods, *opened for signature* April 11, 1980, S. Treaty Doc. No. 9, 98th Cong., 1st Sess. 22 (1983), 19 I.L.M. 671, *reprinted at*, 15 U.S.C. app. 52 (1997).

3

> Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of the contract.

CISG, art. 74.

15.   But for Southeast's breach, Al Hewar would have paid the remaining purchase price of $4,378,500.00.  This cost was avoided by virtue of the breach.

16.   But for Southeast's breach, Al Hewar would have earned approximately $6,806,000.00 from reselling the hay to Abu Dhabi, reflecting a net profit of $100.00 per ton.  Southeast ought to have foreseen this loss at the time of the conclusion of the contract.

17.   Under article seventy-four of the CISG, Al Hewar is entitled to recover the lost proceeds of the resale to Abu Dhabi less the purchase price Al Hewar never had to pay (*$6,806,000.00 - $4,378,500.00*), which is equal to $2,427,500.00, as this is the position Al Hewar would have been in had the contract been performed as expected.  This figure can also be expressed as Al Hewar's total expected profit (*$100/ton * 16,400 tons*) of $1,640,000.00 plus the $7 down payment of $787,500.00 it did not recover for a total of $2,427,500.00.

18.   The loss of the performance bond was also a loss that Southeast ought to have foreseen as a possible consequence of its breach of the contract at the time of the conclusion of the contract.

19.   Therefore, under article seventy-four of the CISG, Al Hewar is also entitled to recover for the loss of the performance bond, amounting to $452,000.00, which is an additional loss Al Hewar suffered as a consequence of Southeast's breach.

20.   The damages awarded under the contract would be the same under the CISG or Florida

4

law.

### B. Fraudulent Inducement

21.  A federal court with diversity jurisdiction over a case applies the conflict-of-laws rules of the jurisdiction in which it sits.  *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941).

22.  Florida applies the "most significant relationship" test to determine the law that applies to tort claims.  *Garcia v. Pub. Health Trust of Dade Cnty.*, 841 F.3d 1062, 1065 (11th Cir. 1988).

23.  Under the most significant relationship test, Florida law applies to the fraudulent inducement claim because, inter alia, a substantial part of the inducement took place in Florida and Defendants reside, are domiciled, and conduct business in Florida.  *See, e.g.*, *Auto Internet Marketing, Inc. v. Targus Info. Corp.*, 2008 WL 5138302, *3-4 (M.D. Fla. Dec. 5, 2008).

24.  Under Florida law, "fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."  *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996).  Therefore, "[a] right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time . . . ."  *Id.* (internal citation omitted).

25.  Under Florida law, a defendant may be held liable for punitive damages when the trier of fact finds intentional misconduct or gross negligence by a standard of clear and convincing evidence.  Fla. Stat. § 768.72(2) (2011).  "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage."  *Id.*  "'Gross negligence' means that the defendant's conduct

5

Memorandum Opinion Containing Findings of Fact and Conclusions of Law
Al Hewar Environmental & Public Health Establishment v. Southeast Ranch, LLC
Case No. 10-80851-CV-HURLEY/HOPKINS

was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life,

safety, or rights of persons exposed to such conduct." *Id.*

26. Al Hewar is entitled to punitive damages of $500,000.00.

### III. Conclusion

In sum, Southeast is liable to Al Hewar for a total of $3,379,500.00, comprised of $2,879,500.00 in expectancy and consequential damages and $500,000.00 in punitive damages.

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1.      Al Hewar is entitled to judgment in the amount of $3,379,500.00 against Southeast Ranch.

2.      Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter final judgment by separate order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 7th day of November, 2011.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

For updated court information, visit unofficial Web site at http://www.judgehurley.com